PHILLIP RUSH, Plaintiff-Appellant, v. BOARD OF EDUCATION OF CRETE-MONEE COMMUNITY UNIT SCHOOL DISTRICT NO. 201-U *et al.*, Defendants-Appellees.

Third District   No. 3—99—0297

Opinion filed March 28, 2000.

Betty Thielemann (argued), of Evanston, for appellant.

Kelly A. Hayden and Raymond Hauser (argued), both of Scariano, Kula, Ellch & Himes, of Chicago Heights, for appellees Board of Education of Crete-Monee Community Unit School District and Alan J. Cook.

James E. Ryan, Attorney General, of Chicago (Paul Racette, Assistant Attorney General, of counsel), for appellee Illinois State Board of Education.

JUSTICE LYTTON delivered the opinion of the court:

Phillip Rush taught the small engines classes in the Crete-Monee Community Unit School District No. 201-U (district). In September 1997, he allowed two students to trade class detentions for electric shocks from a small engine. When one of the students complained, Rush was fired, and his teaching certificate was suspended. After an administrative hearing, his dismissal was upheld. The circuit court affirmed. We affirm the circuit court.

## FACTS

Rush taught the small engines classes in the district for 16 years. During this time, he permitted selected students to trade their first class detention for a shock from a small engine. In September 1997, Rush gave student John Schuricht a detention, which Schuricht was permitted to trade for a shock. While considering this option, Schuricht asked Rush whether Rush would take the shock, Rush said he would not because it might stop his pacemaker. Rush did not actually have a pacemaker, but said he did because he did not like electricity. Schuricht then received the shock. He stated that his arm went numb for a few minutes, which Rush told him was normal. After that his arm tingled for about 30 minutes.

Around the same time, Rush gave student Justin Burnett, who had a learning disability and attention deficit hyperactivity disorder (ADHD), three detentions in one day and offered him the option of taking three shocks instead. Burnett accepted the trade and received the shocks. When Burnett received more detentions the next day, he requested the shocks again, but Rush told him that the trade was only available for the first detention received. Burnett then complained to his school counselor and was subsequently examined by the school nurse, who found no signs of damage. When Burnett told his mother about the shocks the next day, she took him to a physician, who also found no evidence of injury.

The Illinois Department of Children and Family Services investigated the incident and found that the charge was "indicated," meaning that there was evidence of abuse. Rush successfully appealed that finding after a physician testified that a student could not be injured by the voltage from the small engine.

A hearing was then held regarding Rush's teaching certification, and the Will County regional superintendent of schools suspended Rush's teaching certificate for nine months. Rush was also terminated from his job with the district. He subsequently requested a tenured

teacher dismissal hearing. After taking evidence from both the district and Rush, the hearing officer upheld the termination. Rush sought administrative review in the trial court, which affirmed.

## DISCUSSION

Rush asserts that as a tenured teacher he could be dismissed only if his conduct was irremediable. He argues that it was not, relying on *Board of Education of School District No. 131 v. State Board of Education*, 99 Ill. 2d 111, 457 N.E.2d 435 (1983) (*School District No. 131*).

■ We must uphold the factual finding that Rush's conduct was irremediable unless it is against the manifest weight of the evidence. See *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622*, 67 Ill. 2d 143, 153, 365 N.E.2d 322, 326 (1977). In *Gilliland*, 67 Ill. 2d at 153, 365 N.E.2d at 326, our supreme court adopted a two-part test for determining whether a tenured teacher may be dismissed. Under this test, dismissal is proper only: (1) if damage was done to students, faculty, or the school, and (2) if so, the damage could not have been corrected by warning the teacher. *Gilliland*, 67 Ill. 2d at 153, 365 N.E.2d at 326. We now consider the first prong of the *Gilliland* test.

### I

■ Rush's reliance on *School District No. 131* is misplaced. In *School District No. 131*, a teacher was dismissed without notice for using physical force when disciplining students during the last six weeks of his employment. The teacher had previously taught for 17 years without difficulty, the incidents were isolated, and the students involved did not suffer "significant[ ] damage" causing them to miss school or seek medical attention. The supreme court found that the teacher should not have been terminated under those circumstances because his conduct was remediable. *School District No. 131*, 99 Ill. 2d at 119-21, 457 N.E.2d at 439-40.

In the instant case, the incidents of September 1997 were not isolated. Rush admitted that he had allowed students to trade detentions for shocks since the "late '70s, early '80s." Burnett was apparently the first student to complain to the school about the punishment. After Burnett told his counselor about the incident, he was examined by the school nurse. Unlike the students in *Gilliland*, Burnett subsequently sought medical attention from a physician. In addition, there is substantial evidence that the shocks were very painful and had lingering effects. Both Schuricht and Burnett testified that they suffered physical pain when they were shocked. The principal and assistant principal of the school also testified that they personally experienced the shock received by the students and that they suffered

immediate pain and subsequent headaches. Burnett has also had sleeplessness, irritability, emotional distress, and migraine headaches since receiving the shocks.

Moreover, the district psychiatrist who interviewed Burnett and his mother stated that the shock "may increase [Burnett's] feelings of insecurity and increase his poor self esteem and increase his difficulties around positive involvement in education." As for Schuricht, he testified that his discipline record deteriorated after receiving the shocks. Rush failed to offer any expert testimony refuting the physical and psychological damage suffered by those who had received the shocks.

The evidence also establishes that the school and its reputation were harmed by these incidents. The students in the small engines class previously taught by Rush were not able to finish the course and receive credit because a replacement teacher could not be found. The district itself was subjected to negative publicity; it received 15 to 20 calls from parents expressing concern for the safety of their children after Rush's conduct came to light.

Under these circumstances, we cannot say that the finding that Rush's conduct resulted in damage to students, faculty, or the school is against the manifest weight of the evidence. See *Gilliland*, 67 Ill. 2d at 153, 365 N.E.2d at 326.

## II

Next, we consider the second prong of the *Gilliland* test: whether the damage caused by Rush's conduct could have been corrected by a warning. See *Gilliland*, 67 Ill. 2d at 153, 365 N.E.2d at 326.

The district does not permit its teachers to administer corporal punishment to students. "Corporal punishment" is defined as "any kind of punishment of or inflicted on the body" (Black's Law Dictionary 306 (5th ed. 1979)) or "punishment administered by an adult (as a parent or a teacher) to the body of a child ranging in severity from a slap to a spanking" (Webster's Third New International Dictionary 510 (1986)). Under these definitions, Rush's conduct may be appropriately labeled a form of corporal punishment.

The record reveals that Rush had, in fact, been notified in several ways that corporal punishment was not permitted in the district. Section 7.7 of the faculty handbook received by each teacher at the beginning of the school year states in bold, underlined type that "[c]orporal punishment is not allowed" in the district. In addition, the collective bargaining agreement between the district and the teachers' union states that "[p]hysical contact or force may not be used as punishment." Furthermore, the school board policy manual specifically

forbids "[t]he use of corporal punishment" and states that "[a]ll employees are responsible for the safety and well-being of students in their charge." Finally, the Illinois School Code prohibits the "intentional infliction of bodily harm" on students. 105 ILCS 5/24—24 (West 1998).

Evidence adduced at the administrative hearing indicated that Rush was aware that his use of electrical shocks as punishment was not allowed. Rush testified that he only offered this trade-off to students he thought might not want to tell their parents about receiving detentions. He acknowledged that parents would not know about the shocks unless their children told them.

Rush kept school administrators from learning of his conduct by failing to make written discipline referrals when he allowed students to trade shocks for detentions. Furthermore, the shocks were given outside of class time. Rush succeeded in keeping this practice a secret; none of the administrators who testified knew about it prior to Burnett's complaint.

After the school administration found out about Rush's conduct, it began an investigation. Schuricht testified that Rush told his small engines class that Rush was being investigated for corporal punishment. While looking directly at Schuricht, Rush added that he knew who had "told on him." This statement implies that Rush had tried to keep this disciplinary practice a secret because he knew that it was impermissible.

The evidence in the record shows that Rush allowed students to trade shocks for detentions even though he knew this practice was not permitted in the district. Rush had already been warned that teachers were not to inflict corporal punishment on students, yet he continued the practice of giving shocks. Under these circumstances, the finding that a warning could not have corrected the damage is not against the manifest weight of the evidence.

The hearing officer properly found sufficient evidence to show that Burnett, Schuricht, and the school were harmed and that further warning was not necessary. Thus, both prongs of the *Gilliland* test were met.

## CONCLUSION

The judgment of the circuit court of Will County is affirmed.

Affirmed.

HOMER and KOEHLER, JJ., concur.